Gail PEPPMEIER, Appellant,

v.

Bruce MURPHY, D.O., and Heartland
Plastic and Reconstructive Surgery,
P.C., Appellees.

No. 04–0461.

Supreme Court of Iowa.

Dec. 30, 2005.

Robert P. Montgomery and Brandon Brown, Des Moines, for appellant.

Chester C. Woodburn, III, of Hansen, McClintock, & Riley, Des Moines, for appellee Heartland Plastic and Reconstructive Surgery, P.C., and Connie Alt and Nancy J. Penner of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee Murphy.

LAVORATO, Chief Justice.

In this medical malpractice case, the determinative issue is whether summary judgment in favor of an agent bars the plaintiff's claim against the principal when the claim is that the principal is liable for the agent's actions on the basis of respondeat superior. We hold that it does. In doing so, we affirm that part of the court of appeals decision that affirmed the district court's grant of summary judgment in favor of the agent. We vacate that part of the court of appeals decision that reversed the district court's grant of summary judgment in favor of the principal. We affirm the district court judgment.

## I. Scope of Review.

▆ We have recently summarized our review of a ruling on a motion for summary judgment as follows:

> We review a ruling on a motion for summary judgment for errors at law. Summary judgment must be granted
>
> > if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Summary judgment is appropriate if the only conflict concerns the legal consequences of undisputed facts.

*Farmers Nat'l Bank of Winfield v. Winfield Implement Co.*, 702 N.W.2d 465, 465–66 (Iowa 2005) (citations omitted). The questions then are whether there is a genuine issue of material fact and whether the district court correctly applied the law. *Ratcliff v. Graether,* 697 N.W.2d 119, 123 (Iowa 2005). "A factual issue is 'material' only if 'the dispute is over facts that might affect the outcome of the suit.'" *Phillips v. Covenant Clinic,* 625 N.W.2d 714, 717 (Iowa 2001) (citation omitted). The party moving for summary judgment has the burden to prove the facts are undisputed. *Id.*

## II. Background Facts.

On June 3, 2002, Gail Peppmeier sued Dr. Bruce Murphy and Heartland Plastic and Reconstructive Surgery, P.C. (Heartland), alleging, among other things, that Murphy negligently performed breast surgery on her that required additional surgery which was also negligently performed. The claim against Heartland is based on its alleged vicarious liability resulting from the alleged negligent acts of its agent, Murphy.

The following facts have been gleaned from the pleadings, answers to interrogatories, and depositions in this action.

On May 18, 2000, Peppmeier saw Murphy regarding surgery to improve the appearance of her breasts and thighs. At the time, Murphy was with Heartland. Murphy's medical notes of that visit state the following:

This is a 27 year-old white female, who comes to the office today requesting liposuction and in addition, would like to talk about her breasts. She is concerned about her flanks of her thighs.... With regards to her breasts, her primary concern is that she would like her nipples to be higher and not to be bottomed out. She feels she has significant breast tissue at this point, however, she wants the perky nipples she had previously.

. . . .

... With regards to the breasts, she is not interested in being any larger, she would just like her nipples raised. I think a mastopexy [plastic surgery to elevate a sagging breast] [will] provide a lift, although not completely.

On June 2 Murphy performed two procedures on Peppmeier: bilateral accentric mastopexy and bilateral hip ultrasonic assisted lipoplasty. The hip procedure is not at issue as Peppmeier testified in her deposition on August 13, 2003 that she was pleased with the results from that procedure. Dr. Eugene Cherny, sole shareholder, president, and CEO of Heartland, was in the operating room, serving as a proctor for the equipment Murphy used on Peppmeier's hips. Murphy's operative report indicates that the breast surgery resulted in lifting Peppmeier's breast three centimeters from its preoperative position and elevating the nipples and moving them superiorly to twenty-one centimeters.

According to Peppmeier's deposition, she had a post-operative visit with Murphy on June 15 and told him she was not satisfied with the result of the breast surgery. She told him that (1) she was not satisfied with the lift of her breast and (2) her nipples were not where she felt they needed to be.

Peppmeier's petition alleged that Murphy operated again on her on November 28. This time he performed a bilateral submuscular breast augmentation. Peppmeier testified in her deposition that she was still not satisfied with the results. Murphy used implants, which Peppmeier said Murphy told her would be unnecessary. After the implants, Peppmeier believed her breasts were still sagging and her nipples were still pointing down.

On July 3, 2001, Peppmeier saw Cherny at Heartland. By this time, Murphy had left Heartland. In her deposition, Peppmeier testified about that visit with Cherny:

I was extremely upset that day. I was crying. Because at this point I had wasted money as a single mom that necessarily wasn't needed. And time on a second surgery that results were never what I expected nor was I told they would be. Dr. Cherny then immediately said, I agree, the surgery was done wrong. He should have seen that after the very first surgery, the mastopexy,

that—or even before the—I correct myself, before the first surgery, Dr. Murphy should have been able to tell—and I'm not sure why he should have been able to tell, but that he should have been able to tell that the mastopexy would not take on my breasts.

He then agreed that the breast augmentation was done wrong . . . as I'm crying, what am I going to do, he also told me that Dr. Murphy was no longer employed with Heartland . . . and that he was . . . illegally practicing in Des Moines. . . . [A]nd . . . they've had several problems with Dr. Murphy's work.

When asked if there was more, Peppmeier responded this way:

I recall, you know, once again being pressured into you should have a third surgery, this is what we need to do. Being upset, that I'd wasted time and money, of course I right then said, you know, who's going to pay for this. And, you know, questioned him on their liability in the fact that they did employ Dr. Murphy and Dr. Cherny is the—I' m not sure if he's considered the owner of Heartland Plastic Surgery. And he said we will work that out.

Peppmeier testified that at this point she was taken from the examination room to a conference room and met with Derrick Luttrell, then vice president of external affairs, and a women named Claire. Claire McGuire was the vice president of operations at the time. Peppmeier further testified that Luttrell and Claire told her that they would help her sue Dr. Murphy because the surgery was done incorrectly. According to Peppmeier, Luttrell and Claire gave her a phone number for an attorney. Luttrell testified in his deposition that he gave Peppmeier the names of several attorneys.

Some nine months before her deposition, Peppmeier gave the following answer to an interrogatory:

Defendant employed Dr. Murphy and Dr. Cherny was listed as the assisting physician. Defendant is responsible for the actions of Dr. Murphy in this case.

Dr. Cherny met with plaintiff and told her that Dr. Murphy had botched the surgery. He told plaintiff that Heartland would help her sue Dr. Murphy for the negligent operation. After the first surgery, plaintiff's nipples should have been lifted through the mastopexy procedure. Dr. Murphy assured plaintiff she could get the look she wanted without implants. However, plaintiff required implants after the first surgery.

Later, Peppmeier designated Cherny as an expert witness.

Cherny was deposed on October 24, 2003. His testimony can be summarized as follows. He had not been consulted by Peppmeier's attorney before the attorney designated him as an expert on Peppmeier's behalf. Cherny did not intend to express the opinion that Murphy breached the standard of care in this case, and he was not of the opinion that Murphy deviated from the accepted standards of care in treating Peppmeier. Cherny believed that many different methods could be used to achieve the same goal in plastic surgery, and that one doctor's preference for a particular procedure does not mean that the standard of care has been breached.

Cherny stated (1) he did not recall making the statements Peppmeier attributed to him, (2) there was nothing in his medical records that indicated he said these things, (3) he really did not understand what the comments meant, (4) there was nothing in his medical notes that said there was medical malpractice or even anything that is "remotely like what Ms. Peppmeier states," (5) nothing in his medi-

cal records stated that Murphy deviated from the standard of care for plastic and reconstructive surgery of the breast, (6) when he saw Peppmeier, Murphy was just separating or had separated from the practice, and (7) he was quite upset with Murphy and could have said things in the heat of the emotion.

### III. Proceedings Following Discovery.

Following discovery, Murphy filed a motion for summary judgment. In the motion, he contended that the only expert Peppmeier designated did not have an opinion and would not testify at trial that Murphy breached the standard of care in performing the surgeries. Murphy further contended that the extrajudicial statements Peppmeier relied on were insufficient for the expert opinion necessary for a medical malpractice case. Murphy concluded that, because Peppmeier had no expert, she could not establish her medical malpractice action, and for that reason he was entitled to a judgment as a matter of law.

Heartland joined in Murphy's motion for summary judgment, contending that because Murphy was entitled to summary judgment, Peppmeier's action against it, which was based on respondeat superior, must likewise fail.

Following a hearing, the district court granted the defendants' motion for summary judgment. The court concluded that Cherny's July 3, 2001 statements did not, as a matter of law, establish negligence. The court reasoned that such extrajudicial statements were insufficient to substitute for expert testimony because they did not establish the applicable standard of care, a necessary and essential element of Peppmeier's prima facie case required under Iowa law. The court further reasoned that because the extrajudicial statements

were insufficient to substitute for expert testimony as a matter of law, Peppmeier's claim against Heartland could not proceed.

Peppmeier appealed, and we transferred the case to the court of appeals. That court affirmed in part, reversed in part, and remanded for further proceedings.

The court of appeals held that Cherny's July 3, 2001 statements were sufficient to allow a jury to infer that Murphy breached the standard of care. However, pursuant to Iowa Rule of Evidence 5.801($d$)(2), the court concluded the statements were not admissible against Murphy.

As for Heartland, the court of appeals held Cherny's statements were admissible against Heartland, which, the court stated, may be vicariously liable for Murphy's actions. The court further held that as an agent of Heartland, Cherny's statements were admissible against it under rule 5.801($d$)(2)(D), and for that reason the district court erred in granting summary judgment in favor of Heartland.

Heartland filed an application for further review, which we granted.

### IV. Issues.

On further review, Heartland contends the court of appeals erred in (1) concluding Cherny's extrajudicial statements were a sufficient substitute for expert testimony and (2) remanding the case against the principal, Heartland, when the court of appeals found as a matter of law that there was insufficient evidence to establish a prima facie case against the agent, Murphy. Because we agree with Heartland as to the second issue, we restrict our discussion to it.

### V. Vicarious Liability and Res Judicata.

**A. Applicable law.** To establish a prima facie case of medical malprac-

tice, the plaintiff must submit evidence that shows the applicable standard of care, the violation of the standard of care, and a causal relationship between the violation and the harm allegedly experienced by the plaintiff. *Phillips,* 625 N.W.2d at 718. Generally, expert testimony is required to establish specific negligence of a physician. *Kennis v. Mercy Hosp. Med. Ctr.,* 491 N.W.2d 161, 165 (Iowa 1992). There are two recognized exceptions to the requirement of expert testimony, *id.,* neither of which is at issue here.

In *Wiles v. Myerly,* this court held that admissions of a surgeon in notes found in hospital records fulfilled any need for expert testimony in a medical malpractice action to establish that a burn was inflicted. 210 N.W.2d 619, 622–23, 628 (Iowa 1973), *see also Hill v. McCartney,* 590 N.W.2d 52, 57 (Iowa Ct.App.1998) (holding that extrajudicial admissions can supply the necessary expert testimony in a malpractice case).

Here, Peppmeier intended to use statements Cherny allegedly made during the course of a medical appointment as evidence of malpractice by Murphy to establish not only Murphy's negligence, but also that of Heartland on the theory of vicarious liability. The court of appeals concluded these statements were "sufficient to allow a jury to infer Murphy breached the standard of care."

However, the court of appeals concluded the statements were *not admissible* against Murphy as admissions by a party opponent, and for that reason the district court properly granted summary judgment in favor of Murphy. Murphy raised this evidentiary issue on appeal as an alternative ground to support the district court's grant of summary judgment in his favor. Murphy also raised this issue in the district court to support his motion for summary judgment. Although the district

court did not base its decision on this ground, the court of appeals properly considered it. *See DeVoss v. State,* 648 N.W.2d 56, 61–62 (Iowa 2002).

■ Peppmeier did not file an application for further review to challenge the court of appeals holding that the district court properly granted summary judgment in favor of Murphy. Such failure means this holding by the court of appeals is a final adjudication that Murphy is not liable.

We are mindful of our rule that allows us to review any or all issues raised on appeal or to limit our review to just those issues brought to our attention by the application for further review. *See Anderson v. State,* 692 N.W.2d 360, 363 (Iowa 2005). We see no problem applying the rule when we have only two parties, but here we have one plaintiff and two defendants, one of whom has been relieved of liability. Under these circumstances, we think Peppmeier should have filed an application for further review to preserve her issues as to Murphy. We consider her failure to do so a waiver. A contrary decision would amount to blindsiding Murphy, who took no further part in the appeal process after the court of appeals decision, believing, we are convinced, that Peppmeier had indeed waived any issues as to him.

The court of appeals further concluded that Cherny's statements *were admissible* against Heartland, which the court found, may be vicariously liable for Murphy's actions. The court held that "[a]s an agent of Heartland, Cherny's statements are admissible against it under [Iowa Rule of Evidence] 5.801(*d*)(2)(D)." Rule 5.801(*d*)(2)(D) provides that an out of court statement is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of

the agency or employment, made during the existence of the relationship." Iowa R. Evid. 5.801($d$)(2)(D). The court of appeals conclusion that Cherny's statements were admissible against Heartland led that court to hold that the district court erred in granting summary judgment in favor of Heartland.

We assume without deciding that the court of appeals was correct in its conclusion that the challenged statements were sufficient to generate a fact question on whether Murphy breached the standard of care. We also assume without deciding that the court of appeals was correct in its conclusion that the challenged statements were admissible against Heartland, a party to this action, under rule 5.801($d$)(2)(D).

■■ The issue then becomes whether a principal (Heartland) may be held vicariously liable for an agent's (Murphy) actions based on respondeat superior when there has been a final adjudication that the agent (Murphy) was not liable. Respondeat superior (from Latin, meaning "let the superior make answer") is a doctrine holding that an employer or principal is liable "for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Black's Law Dictionary* 1338 (8th ed.2004). This issue brings into focus the doctrine of res judicata, which provides that

"a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action."

*Bennett v. MC # 619, Inc.,* 586 N.W.2d 512, 516 (Iowa 1998) (citation omitted).

Res judicata has special applicability in suits against a principal or agent. In those circumstances, courts have recognized the rule

that a judgment in favor of either, in an action brought by a third party, rendered upon a ground equally applicable to both, should be accepted as conclusive against the plaintiff's right of action against the other, or as to any issues decided in the prior action. Thus, it has been held that where the liability of a principal is derivative [that is, the principal's liability rests upon respondeat superior and not on the principal's independent tort, for example, negligent supervision or training], a judgment on the merits in favor of the agent is res judicata in favor of the principal, although he was not a party to the earlier action. And where a judgment is in favor of the principal, the judgment is res judicata in an action against the agent, a derivative responsibility being present.

47 Am.Jur.2d *Judgments* § 687, at 145–46 (1995) (footnotes omitted); *see also Biddle v. Sartori Mem'l Hosp.,* 518 N.W.2d 795, 799 (Iowa 1994) (holding that liability based on respondeat superior is derivative and that physician's settlement of medical malpractice claim extinguished any further claim patient's husband had against hospital on theory of vicarious liability; settlement wiped out any fault derived from physician's conduct, separate and apart from hospital's negligence, for which hospital remained accountable at trial); Restatement (Second) of Judgments § 51, at 47–48 (1982). This rule applies whether the actions are separate or the principal and agent are joined in the same action. *Morehouse v. Wanzo,* 266 Cal.App.2d 846, 72 Cal.Rptr. 607, 611 (1968); *see also Wiedenfeld v. Chicago & Nw. Transp. Co.,* 252 N.W.2d 691, 695 (Iowa 1977) (recognizing that right of injured party to hold principal liable is a "direct or primary right" and that the agent is not a neces-

sary party to an action against the principal).

One court has explained the rationale underlying the rule this way:

> When an action is brought against a [principal] based on the alleged negligent acts of his [agent], and no independent wrong is charged on behalf of the [principal], [the principal's] liability is entirely derivative, being founded upon the doctrine of Respondeat superior. In this regard, it has been said that the liability of the [principal] and [agent] for the acts of the [agent] is deemed that of one tortfeasor and is a consolidated or unified one. As such, any legal claim against the [principal] must be said to be identical to that which the plaintiff may have asserted against the [agent]. The operative facts which comprise the alleged bases for liability of the [principal] are identical to those which would prove the [agent] liable. Indeed, if the agency relationship is not in dispute, any act of the [agent] which renders the [principal] liable also renders the [agent] liable. A judgment, therefore, adjudicating the [principal] not liable, where a judgment to the contrary could have only resulted from a finding that the [agent] committed an actionable wrong against the plaintiff, is a judgment in legal effect that the [agent] is not liable.... [T]o hold otherwise would allow the plaintiff to have two trials for the same cause of action.

*Towns v. Yellow Cab Co.*, 73 Ill.2d 113, 22 Ill.Dec. 519, 382 N.E.2d 1217, 1221–22 (1978) (citations omitted) (trial court's dismissal of passenger's allegations against cab company for failure to answer interrogatories in violation of court order held to have barred passenger's action against driver); *see also* Restatement (Second) of Judgments § 51 cmt. b, at 50–51 (1982).

**B. Analysis.** Here, as mentioned, the court of appeals has determined that Peppmeier has no claim against Murphy because Cherny's statements about Murphy's alleged malpractice were not admissible against Murphy. This determination led the court of appeals to conclude the district court properly granted summary judgment in favor of Murphy. That decision became final when Peppmeier did not seek further review on this issue. The one remaining question therefore is whether the court of appeals' conclusion that the district court properly granted summary judgment in favor of Murphy bars Peppmeier's claim against Heartland under principles of res judicata.

Iowa Rule of Civil Procedure 1.951 provides that "[e]very final adjudication of any of the rights of the parties in an action is a judgment." And a judgment is a "final judgment" if it " 'finally adjudicates the rights of the parties.' " *Nuzum v. State*, 300 N.W.2d 131, 133 (Iowa 1981) (citation omitted). A "final judgment" has also been defined as "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs ... and enforcement of the judgment." *Black's Law Dictionary* 859 (8th ed.2004). A grant of summary judgment means there is no genuine issue as to any material fact. Iowa R. Civ. P. 1.981(3). And a fact is material only if it is outcome determinative. *Phillips*, 625 N.W.2d at 717.

Admittedly, the res judicata rule speaks in terms of requiring "a final judgment on the merits." *See Black's Law Dictionary* 860 (8th ed.2004) (defining judgment on the merits as "[a] judgment based on the evidence rather than on technical or procedural grounds"). A final judgment on the merits suggests a trial of contested facts in contrast to a summary judgment, which is entered without a trial and without specific

factual findings. One legal source has explained the use of the language "judgment on the merits":

> It is commonly said that preclusion can rest on a judgment that is valid, final, and on the merits. The phrase "on the merits" has been used for a long time, and is continued today ... in judicial usage.... It is an unfortunate phrase, which could easily distract attention from the fundamental characteristics that entitle a judgment to greater or lesser preclusive effects. The characteristics that determine the extent of preclusion may have little to do with actual resolution of the merits, although the paradigm will always be a judgment entered after full trial of all disputed matters. Thus it is clear that an entire claim may be precluded by a judgment that does not rest on any examination whatever of the substantive rights asserted. On the other hand, further litigation of particular issues may be precluded by judgments that do not bar further litigation on the underlying claim. [For example, dismissal of an action for lack of subject-matter jurisdiction does not preclude a second action on the same claim in a court that does have subject-matter jurisdiction, but does preclude relitigation of the question whether the first court had subject matter jurisdiction]. The only virtue that redeems the "on-the-merits" phrase from oblivion is its service as a shorthand reminder that the extent of preclusion is measured by factors beyond validity and finality.

18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4435, at 132–35 & 134 n. 7 (2d ed.2002) [hereinafter Wright] (footnotes omitted); *see also* Restatement (Second) of Judgments § 19 cmt. a, at 161 (1982) (eliminating reference to judgments

on the merits "because of [the] possibly misleading connotations").

As for the preclusive effect resulting from summary judgments, the same legal source states:

> Both claim preclusion and issue preclusion result from summary judgments that rest on the lack of any genuine issue of material fact going to the merits of claim or defense. To be sure, it might be possible to advance the sophistic argument that preclusion is inappropriate since there has been no resolution of questions of fact, only a determination that there are no questions of fact.... Preclusion is appropriate even if the summary-judgment motion went unopposed; the court still must decide that the moving party has carried the summary-judgment burden, and a party should not be able to salvage a losing position for another day by simply walking away from the summary-judgment proceeding.
>
> Only two possible qualifications need be noted.

18A Wright, *Federal Practice and Procedure* § 4444, at 294–96 (footnotes omitted). Neither one of the qualifications applies to this case. *See id.* § 4444, at 296–99.

As one court noted,

> We reject out of hand the beguiling but superficial contention ... that neither Suit No. 1 nor No. 2 can have any collateral estoppel effect because no summary judgment can have such effect. This is based on an overemphasis of two assertions: (1) a collateral estoppel results only from an actual decision of an issue and (2) a summary judgment results from a finding that there is no genuine issue as to any material fact.
>
> It would be strange indeed if a summary judgment could not have collateral estoppel effect. This would reduce the utility of this modern device to zero....

Indeed, a more positive adjudication is hard to imagine.

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 421 F.2d 1313, 1319 (5th Cir.1970). A number of other courts have similarly held that a summary judgment constitutes a final judgment on the merits. *See, e.g., Griego v. Padilla*, 64 F.3d 580, 584–85 (10th Cir.1995); *King v. Hoover Group, Inc.*, 958 F.2d 219, 222 (8th Cir.1992); *Dowd v. Soc'y of St. Columbans*, 861 F.2d 761, 764 (1st Cir.1988); *Spiegel v. Cont'l Ill. Nat'l Bank*, 790 F.2d 638, 645 (7th Cir.1986); *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n. 3 (4th Cir. 1984); *Jackson v. Hayakawa*, 605 F.2d 1121, 1125 & n. 3 (9th Cir.1979); *Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 524 (3d Cir.1973); *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis.2d 306, 334 N.W.2d 883, 885 (1983).

 We agree with these authorities that, except in limited situations not relevant here, a summary judgment constitutes a final judgment on the merits. The summary judgment in favor of Murphy rests on the lack of any genuine issue of material fact going to the merits of Peppmeier's claim against Murphy and was a final judgment on the merits that Peppmeier had no claim against Murphy. The summary judgment disposed of all issues and controversies between Peppmeier and Murphy. Because Peppmeier's claim against Heartland was based on the *same* facts that comprised her claim against Murphy, her claim against Heartland is necessarily barred. Stated another way, because Peppmeier's claim against Heartland was that of vicarious liability based on respondeat superior regarding Murphy's actions rather than on Heartland's independent tort, the summary judgment in favor of Murphy is res judicata in favor of Heartland.

**VI. Disposition.**

As mentioned, Peppmeier did not seek further review concerning the court of appeals decision affirming the district court's grant of summary judgment in favor of Murphy. We therefore affirm that part of the court of appeals decision and affirm the district court's grant of summary judgment in favor of Murphy. Because we conclude Peppmeier's claim against Heartland is barred, we must vacate the court of appeals decision that concluded the district court erred in granting summary judgment in favor of Heartland. In doing so, we must also affirm the district court's grant of summary judgment in favor of Heartland.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except CARTER, J., who takes no part.