**IN THE COURT OF APPEALS OF IOWA**

No. 13-1811
Filed July 16, 2014

**ACTUALLY CLEAN FLOOR & FURNITURE,
L.L.C., Assignee of JASON BAILEY,**
    Plaintiff-Appellant,

**vs.**

**ACTION RESTORATION, INC.,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Linn County, Marsha M. Beckelman, Judge.


    Actually Clean Floor & Furniture appeals the district court's grant of summary judgment in favor of Action Restoration, Inc. **AFFIRMED IN PART AND REVERSED IN PART.**


    Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

    Brenda K. Wallrichs and Mark J. Parmenter of Lederer Weston Craig P.L.C., Cedar Rapids, for appellee.


    Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

Actually Clean Floor & Furniture (Actually Clean) appeals the district court's grant of summary judgment in favor of Action Restoration, Inc.  Actually Clean asserts the court erred in determining Action Restoration did not owe Actually Clean a commission for using Action Restoration's "Water Out" drying units in Actually Clean's territory, as stipulated in Actually Clean's territorial policy with Water Out Drying Corporation.  Actually Clean further argues there is a genuine issue of material fact with respect to an oral agreement for loss of use damages regarding Actually Clean's damaged hurricane remediation equipment. We conclude the court properly interpreted the pertinent contract in determining Action Restoration did not owe Actually Clean a commission, and therefore summary judgment as to this claim was appropriate.  However, there is an issue of material fact with regard to Actually Clean's loss of use claim.  Consequently, we affirm in part and reverse in part the district court's grant of summary judgment.

**I. Factual and Procedural Background**

Actually Clean is a company operating in Cedar Rapids, Iowa, that provides drying services to properties in flooded areas.  It is owned by Jason Bailey.  Action Restoration is also a company that uses drying units to remove water from flooded buildings.  It is incorporated in Texas.  Water Out Drying Corporation (Water Out) was a company that sold patented drying equipment, though after filing for bankruptcy, it is no longer operational.

On March 6, 2004, Bailey entered into a "Purchase Option Agreement" with Water Out to buy drying equipment.[1]  Bailey later assigned his rights and obligations under this contract to his company, Actually Clean.  Relevant portions of the agreement state:

> The term of this agreement will begin on the delivery date of the equipment in the above referenced Sales Agreement and end 12 months after the delivery date unless extended as permitted below.  CUSTOMER may extend the term of this agreement by purchasing additional Water Out W016TM drying equipment, or manufacturer's equivalent.  Each additional purchase will extend the term of this agreement 12 months.
> . . . .
> The territorial agreement will automatically extend for a period of one additional year (12 months) upon purchase of an additional unit.  When the CUSTOMER has purchased one trailer per 250,000 people (combined population) in the listed territories, that territory will be deemed exclusive to that CUSTOMER.
> Should a time arise when the counties listed above need the service of more equipment than the CUSTOMER can provide, CUSTOMER agrees that Water Out Drying Corp. or other owners of the equipment may provide services during those times of need. CUSTOMER also agrees to notify Water Out Drying Corp. if service needs exceed the CUSTOMER'S capabilities.

According to deposition testimony, Bailey entered into a "Water Out Drying Corp. Territorial Policy" as a "licensee" sometime between March 2004 and July 2006.  Actually Clean's territory, as defined in this policy agreement, consists of Linn and Johnson County, Iowa.  Relevant portions of the Territorial Policy state:

> Water Out Drying Corp.'s licensees ("Licensees") are licensed to perform water extraction and drying services utilizing our proprietary trailer-mounted drying system.  This policy is written by Water Out Drying Corp., and agreed to by Water Out Drying Corp.'s Licensees, to give effect to the terms of the Water Out Standard Licensing Agreement with respect to territorial rights.
> . . . .
> Water Out Drying Corp. may, in its sole discretion, provide such equipment through itself or other Licensee(s) such Water Out

---

[1] The agreement was signed by a Water Out representative on March 24, 2004.

Drying Equipment as may be requested or needed on the following terms and conditions. Any entity which provides such Water Out Drying Equipment, whether it is Water Out Drying Corp. or one or more of its Licensees, shall be entitled to 80% of the contract price for any job at which its equipment is used and the Licensee whose territory it is in shall be entitled to 20% of the contract price.

Action Restoration is not a party to this agreement.

During its purchase of several units of Water Out's drying equipment, Action Restoration was a party to three Exclusive Territory Agreements, one each for the territory covered, which included parts of Texas, Louisiana, and Mississippi. These agreements state in part:

Company hereby grants to ARI the exclusive rights to utilize the System within the territory detailed hereinafter, and ARI accepts such appointment. ARI agrees to promote utilization of the System within the territory described hereinbelow . . . . Company further acknowledges and agrees it will provide notice of this grant of exclusivity to all entities/persons authorized to utilize the Water Out System and related Patented Products . . . and shall further confirm to said entities that said entities are not authorized to sell, market or utilize Water Out Systems and related Patented Products within the state of Texas so long as ARI exclusivity rights are in force.
. . . .
During the term of this Agreement and any renewal term, for any sale, marketing and/or utilization of the System and the Patented Products, whether now owned or hereinafter acquired, (including new models, versions or enhancements) within the Territory defined herein above, ARI shall not be obligated to pay to Company a royalty fee, trademark fee, licensing fee, franchise fee, or other type of fee or expense not expressly required under the terms and conditions of this Agreement.

According to Charles Cressy, former CEO of Water Out, Action Restoration never entered into an agreement in which it purported to be a licensee of Water Out.[2] Nor did Water Out at any time direct Action Restoration to perform work on

---

[2] At one point in his deposition, Cressy stated Action Restoration had entered into a licensing agreement with Water Out. However, he later clarified that statement,

its behalf. Rather, the contract defined Action Restoration as an independent contractor. Consequently, the Exclusive Territory Agreement signed by Action Restoration and the Territorial Policy signed by Actually Clean are not the same contracts, and set forth different rights and obligations.

Following a June 2008 flood in Iowa, Action Restoration began operating in Iowa with the permission of Actually Clean. In the fall of 2008, Actually Clean leased certain equipment to Action Restoration for hurricane remediation in Louisiana and Texas. Some of this equipment was damaged in a semi truck accident or otherwise lost. Action Restoration's insurance company compensated Actually Clean for the damaged or lost equipment on March 24, 2009. Actually Clean asserts there was also an oral agreement for Action Restoration to pay loss of use damages related to the equipment, which Action Restoration never paid.

---

testifying that these contracts were not licensing agreements and that Action Restoration had never been a licensee of Water Out. Specifically, the following exchange occurred:

> Q: Did Water Out Drying Corporation enter into any written agreements with Action Restoration associated with the purchase of those 30 some odd Water Out trailers you just discussed? A: Yes, we did.
>
> Q: Do you recall what kind of agreements those were? A: Well, standard licensing agreements, territory agreements, that sort of thing.
>
> Q: Okay. You said licensing agreement, did Action Restoration enter into any licensing agreements with Water Out? A: No, they— . . . . Action Restoration did not enter a license agreement with us, only territory agreements.
>
> . . . .
>
> Q: Is there any language or provision in any of the three territory agreements . . . that classifies or characterizes Action Restoration as a licensee of Water Out Drying Corporation? . . . . A: No.
>
> . . . .
>
> Q: Did you or anyone from Water Out Drying Corporation direct or ask Action Restoration to come to Cedar Rapids to perform any services following the flood in Cedar Rapids in 2008? A: No, we did not.

On November 5, 2010, Actually Clean filed a petition, then an amended petition, alleging: (1) Action Restoration owed Actually Clean a 20% commission for the work it performed in Iowa, pursuant to Actually Clean's Territorial Policy with Water Out; (2) Action Restoration was responsible for a 5% commission for Iowa referral fees, also pursuant to the Territorial Policy; and (3) Actually Clean was entitled to loss of use damages because of the damaged hurricane remediation equipment, and Action Restoration breached an oral agreement to pay these damages. Action Restoration asserted a breach of contract counterclaim related to equipment it leased to Actually Clean as well as a claim for unjust enrichment. It then filed a motion for partial summary judgment with respect to the first and third counts of Actually Clean's petition. On September 26, 2013, the district court granted Action Restoration's motion, and the parties then agreed to a mutual dismissal of count two—the referral fee—as well as Action Restoration's counterclaims. Actually Clean appeals the grant of the motion for partial summary judgment.

## II. Standard of Review

We review an order on a motion for summary judgment for correction of errors at law. *Peppmeier v. Murphy*, 708 N.W.2d 57, 58 (Iowa 2005). Summary judgment is appropriately granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* The facts are taken in the light most favorable to the non-moving party. *Id.*

## III. Breach of Territorial Policy Agreement

Actually Clean first asserts that, under the Territorial Policy, any entity using Water Out's drying equipment in Actually Clean's territory is obligated to

pay a twenty percent commission on any of its revenue. Consequently, when Action Restoration conducted business in Cedar Rapids in 2008, it breached its obligation under this policy when it failed to pay Actually Clean a twenty percent commission. Specifically, Actually Clean relies on the portion of the policy that states: "When the CUSTOMER [Actually Clean] has purchased one trailer per 250,000 people (combined population) in the listed territories, that territory would be deemed exclusive to that CUSTOMER." Actually Clean further relies on its interpretation that the territorial agreement into which Action Restoration entered rendered it a "licensee" of Water Out, and therefore subject to Actually Clean's Territorial Policy's licensee provisions.

A contract may be used to establish a licensor-licensee relationship between two parties. *See Wickersham v. Orr*, 9 Iowa 253, 259–60 (1859). Absent a contract, an established right with respect to the licensor's property, or other agreement, two independent parties are not in a licensor-licensee relationship. *See generally id.* (discussing a licensor-licensee relationship based on contract); *see also Koenig v. Koenig*, 766 N.W.2d 635, 638 (Iowa 2009) (noting the licensor-licensee relationship pursuant to the licensee's rights with respect to the licensor's property).

In granting Action Restoration's motion with regard to Count I, the district court stated:

> The Territorial Policy provides that Water Out may provide drying equipment from itself or other licensees, and the clause applies only when Water Out provides such equipment, in its sole discretion, through itself or other licensees. The Court concludes the undisputed facts show that Defendant was not a licensee, and Water Out did not direct Defendant to Cedar Rapids in 2008.

We agree with the court's conclusion there is no genuine issue of material fact with respect to whether Action Restoration owed a commission to Actually Clean. Actually Clean's Territorial Policy clearly states the only time a commission is owed is when Water Out directs one of its licensees to operate Water Out drying equipment in Actually Clean's territory. Even when the facts are taken in the light most favorable to Actually Clean, there is no evidence Action Restoration either went to Iowa under the direction of Water Out or was otherwise a licensee, given there was no agreement between Water Out and Action Restoration designating Action Restoration as a licensee of Water Out. Though Actually Clean places great weight on the fact Cressy stated Action Restoration had a licensing agreement with Water Out, he later clarified this statement, asserting Water Out neither directed Action Restoration to perform work in Iowa nor designated Action Restoration as a licensee. Cressy's initial statement, which he quickly corrected, does not establish a genuine issue of material fact, particularly given the lack of any other evidence establishing a licensor-licensee relationship between Action Restoration and Water Out. Consequently, pursuant to the contracts between Action Restoration and Water Out, and Actually Clean and Water Out, Action Restoration was under no obligation to pay a commission to Actually Clean. The district court therefore properly granted summary judgment in favor of Action Restoration with respect to this claim.

**IV. Loss of Use**

Actually Clean further asserts there is an issue of material fact with regard to its claim Action Restoration breached an oral agreement to compensate

Actually Clean for loss of use or rental value to damaged hurricane remediation equipment. It argues that, because the district court relied solely on answers to interrogatories and the amended petition, and otherwise misconstrued its loss of use claim, there is a genuine issue of material fact precluding summary judgment.

Loss of use damages are incurred when a chattel is injured and the plaintiff is deprived of its use. *Long v. McAllister*, 319 N.W.2d 256, 259–60 (Iowa 1982) ("Loss of use damages will be incurred as readily when a vehicle is totally destroyed or when it cannot be restored by repair to its prior condition as when the vehicle can be restored by repair.") (internal citation omitted). The measure for loss of use damages "is the net market value of the use of the property during the period it was wrongfully detained." *Universal C.I.T. Credit Corp. v. Jones*, 227 N.W.2d 473, 479 (Iowa 1975). The plaintiff does not need to prove the property would have been used in order to recover damages for loss of use. *Barry v. State Sur. Co.*, 154 N.W.2d 97, 100 (Iowa 1967) ("The basis for allowing damages in such cases is that a plaintiff has been deprived of his rightful possession [of the property]."); *but see Flickinger v. Mark IV Apartments Ass'n*, 315 N.W.2d 794, 798 (Iowa 1982) ("The rule authorizing recovery for loss of use when the property could not or would not have been used, is not applicable when use of the property is not prevented by the party that wrongfully seized the property."). The time period in which loss of use damages are assessed is the time from which the property was damaged or lost until the time it or a replacement was recovered. *Long*, 319 N.W.2d at 260 ("[T]he relevant period of

time in destruction cases is only the time reasonably required to obtain a replacement.") (internal citation omitted).

In concluding Actually Clean's loss of use claim failed as a matter of law, the district court stated:

> [W]hen the facts are viewed in the light most favorable to Plaintiff, Plaintiff's claim for loss of use damages fails. Plaintiff simply has failed to set forth any specific evidentiary fact showing the existence of a genuine issue of material fact on the question of whether Plaintiff is entitled to loss of use or rental value for the equipment between the time the equipment was damaged and the time Plaintiff was compensated for the damage. Plaintiff has not provided sufficient documentation to support its claim that it would have or could have rented the equipment during the time period (which also is vague) for which it claims loss of use damages. Therefore, the Court concludes there is no basis for Plaintiff to proceed with its loss of use claim, and Count III fails as a matter of law.

We do not agree with the district court's assertion Actually Clean was required to provide proof it could have or would have rented the equipment had it not been damaged. *Barry* held that the concept of loss of use is premised on the deprivation of the plaintiff's property, and thus the plaintiff is not required to show exact proof that, for example, it would have definitively rented out the equipment but for the damage. *See Barry*, 154 N.W.2d at 100. It is undisputed Actually Clean's equipment was damaged during Action Restoration's possession of the equipment. Actually Clean was thus deprived of the use of its property, and is therefore able to establish the essential elements for a loss of use claim. *See id.*; *C.I.T. Credit Corp.*, 227 N.W.2d at 479.

Additionally, we do not agree with Action Restoration's argument that Actually Clean cannot succeed on its claim because the timeframe in which it alleged it could not use the equipment was too vague. Actually Clean's answer

to the interrogatories stated: "The equipment was not available for rental from the date of the accident until the insurance proceeds check was issued, at which time the Plaintiff would have been in a position to replace the equipment. This answer will be supplemented with exact dates." Though devoid of precise dates, this is enough to establish a reasonable timeframe, particularly given Action Restoration does not dispute that the equipment was damaged or otherwise lost during this timeframe.

Moreover, the loss of use cause of action does not necessarily need to be premised upon a contract, written or otherwise. *See generally Long*, 319 N.W.2d at 259–60; *Mills v. Guthrie Country Rural Elec. Coop. Ass'n*, 454 N.W.2d 846, 850 (Iowa 1990) (holding the plaintiff could recover loss of use damages for destroyed equipment from the time it was damaged to "the time reasonably required to replace it," though there was no contractual relationship between the plaintiff and defendant). Consequently, Actually Clean's lack of evidence regarding the oral contract does not have a bearing on whether there is a question of material fact with regard to its loss of use claim. We therefore conclude the district court improperly granted summary judgment regarding Actually Clean's loss of use cause of action, and reverse this portion of the court's decision.

**AFFIRMED IN PART AND REVERSED IN PART.**