**Janet PHILLIPS, Executor of the Estate of Paul Harvey Phillips, Appellant,**

v.

**COVENANT CLINIC, Ronald Roth, Thomas Pattee, and Ronald Flory, Appellees.**

No. 99–0865.

Supreme Court of Iowa.

April 25, 2001.

---

Roman Vald and David L. Phillips of Phillips, McCollom, Kozlowski & Vald, P.L.C., West Des Moines, for appellant.

George L. Weilein of Gallagher, Langlas & Gallagher, P.C., Waterloo, for appellees.

CADY, Justice.

Janet Phillips, as executor of her father's estate, brought this wrongful death action against the Covenant Clinic and three physicians after her father died of heart failure shortly after being treated at the clinic. The district court granted summary judgment for the clinic and the physicians, concluding that Janet had presented insufficient facts to support the proximate cause element of her claim.

Janet appeals, claiming she was entitled to an inference derived from the failure of the clinic to produce medical records to support a genuine issue of material fact with respect to causation. We affirm.

## I. Background Facts and Proceedings.

Paul Harvey Phillips went to the Covenant Clinic in Waterloo on January 3, 1996, complaining of flu-like symptoms. He was eighty years old. Debra Cortes, a physician's assistant, examined Paul and learned he was experiencing chest pains. Paul had recently suffered congestive heart failure. Dr. Ronald Roth, who was supervising Cortes, ordered an EKG and a chest x-ray.

After the EKG was performed, Paul was permitted to walk on his own to the neighboring hospital for the chest x-ray. He collapsed, however, on his way to the hospital in cardiac arrest. Around the same time, Dr. Thomas Pattee reviewed Paul's EKG strip. When Dr. Pattee learned Paul had collapsed on his way to the hospital, he grabbed Paul's entire medical file from the clinic, which included the EKG results, and hand-delivered the file to the intensive care unit of the hospital, where Paul was being treated. Doctors at the hospital were unable to save Paul's life. He died at the hospital.

In June 1996, Janet sought her father's medical records from the clinic. The clinic subsequently informed Janet that her father's medical file was missing. No one at the hospital or clinic had seen Paul's medical file since it had been hand-delivered to the intensive care unit by Dr. Pattee on January 3, 1996. The only document the clinic was able to produce was Cortes' notes from the January 3 office visit. The clinic asked Janet to check Paul's personal belongings from the January 3 hospitalization to ensure the clinical records had not

been inadvertently included with those belongings. The medical records were not found.

Janet filed this wrongful death action on January 2, 1998. She alleged medical malpractice against the Covenant Clinic, Dr. Roth, Dr. Pattee, and Dr. Ronald Flory.[1] Pursuant to Iowa Code section 668.11 (1997), Janet named Dr. R. William Overton, III, as her medical expert. Dr. Overton concluded the clinic doctors breached their duty of care in treating Paul on January 3, 1996, by permitting him to leave the clinic before reviewing the EKG results. However, because Paul's medical file was unavailable for review, Dr. Overton was unable to conclude the breach caused Paul's death. The only document available for Dr. Overton to review was the office notes prepared by Cortes regarding the January 3 office visit. This document consisted of both dictated and handwritten notes. Dr. Overton concluded Cortes added the handwritten notes after her dictation had been transcribed, and found this conduct was potentially indicative of an attempt to conceal the medical records.

The defendants moved for summary judgment. They claimed Janet's failure to establish a causal relationship between the doctors' purported breach of the standard of care and Paul's death was fatal to her claim. Janet resisted the motion. She claimed the defendants' failure to produce relevant records within their control entitled her to an inference that the missing medical records contained evidence unfavorable to the defendants, and that this inference gave rise to a genuine issue of material fact on the causation element.

The district court granted the motion for summary judgment. Janet appeals. She claims the district court erred in holding the spoliation inference could not support a

proximate cause finding under the circumstances.

## II. Scope of Review.

 We review a ruling on a summary judgment motion for errors at law. *Crippen v. City of Cedar Rapids,* 618 N.W.2d 562, 565 (Iowa 2000); *Swartzendruber v. Schimmel,* 613 N.W.2d 646, 649 (Iowa 2000); *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.,* 606 N.W.2d 359, 362 (Iowa 2000); *Bennett v. MC # 619, Inc.,* 586 N.W.2d 512, 516 (Iowa 1998). A district court properly grants summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Crippen,* 618 N.W.2d at 565; *Swartzendruber,* 613 N.W.2d at 649; *Shivvers v. Hertz Farm Mgmt., Inc.,* 595 N.W.2d 476, 478 (Iowa 1999); *Bennett,* 586 N.W.2d at 516. A factual issue is "material" only if "the dispute is over facts that might affect the outcome of the suit." *Fouts ex rel. Jensen v. Mason,* 592 N.W.2d 33, 35 (Iowa 1999) (citation omitted). The burden is on the party moving for summary judgment to prove the facts are undisputed. *Interstate Power Co. v. Ins. Co. of N. Am.,* 603 N.W.2d 751, 756 (Iowa 1999); *Bennett,* 586 N.W.2d at 516; *Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457, 464 (Iowa 1984).

 In ruling on a summary judgment motion, the court must look at the facts in a light most favorable to the party resisting the motion. *Crippen,* 618 N.W.2d at 565; *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.,* 606 N.W.2d at 362; *Shivvers,* 595 N.W.2d at 478–79; *Fouts,* 592 N.W.2d at 35; *Sandbulte,* 343 N.W.2d at 464. The

---

1. Dr. Flory did not see Paul or his EKG chart on January 3, 1996. However, Dr. Flory treated Paul at the clinic approximately two weeks before Paul's death.

court must also consider on behalf of the nonmoving party every legitimate inference that can be reasonably deduced from the record. *Crippen,* 618 N.W.2d at 565; *Shivvers,* 595 N.W.2d at 479; *Schlader v. Interstate Power Co.,* 591 N.W.2d 10, 14 (Iowa 1999). An inference is legitimate if it is "rational, reasonable, and otherwise permissible under the governing substantive law." *Butler v. Hoover Nature Trail, Inc.,* 530 N.W.2d 85, 88 (Iowa Ct.App. 1994). On the other hand, an inference is not legitimate if it is "based upon speculation or conjecture." *Id.* If reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists. *Swartzendruber,* 613 N.W.2d at 649; *Shivvers,* 595 N.W.2d at 479; *Fouts,* 592 N.W.2d at 35; *Schlader,* 591 N.W.2d at 14.

### III. Spoliation of Evidence.

To establish a prima facie case of medical malpractice, the plaintiff must demonstrate the applicable standard of care, the violation of this standard of care, and a causal relationship between the violation and the harm allegedly suffered by the plaintiff. *Kennis v. Mercy Hosp. Med. Ctr.,* 491 N.W.2d 161, 165 (Iowa 1992). Expert testimony is nearly always required to establish each of these elements. *Id.; see Edwards v. City of Des Moines,* 349 N.W.2d 786, 789–90 (Iowa Ct.App. 1984). Moreover, proximate cause, like the other elements, cannot be based upon mere speculation. *See Walls v. Jacob N. Printing Co.,* 618 N.W.2d 282, 286 (Iowa 2000) ("[t]he record cannot be stretched that far without rank speculation"). No consequential fact in a case can be resolved by pure guesswork. *Id.*

Although the expert in this case, Dr. Overton, concluded the defendants breached the duty of care they owed to Paul, he was unable to establish the existence of a causal relationship between this breach and Paul's death. Additionally, Dr. Overton could not even state that there was a possibility that Paul would have survived absent the defendants' breach. *See Edwards,* 349 N.W.2d at 790.

Notwithstanding, Janet argues that the clinic's failure to produce the medical records gives rise to an inference that the physicians' conduct in treating her father was negligent and the cause of his death. She claims this inference is sufficient to overcome the motion for summary judgment.

It is a well established legal principle that the intentional destruction of or the failure to produce documents or physical evidence relevant to the proof of an issue in a legal proceeding supports an inference that the evidence would have been unfavorable to the party responsible for its destruction or nonproduction. *Hendricks v. Great Plains Supply Co.,* 609 N.W.2d 486, 491 (Iowa 2000); *State v. Langlet,* 283 N.W.2d 330, 333 (Iowa 1979); 2 Clifford S. Fishman, *Jones on Evidence* § 13:12, at 489 (7th ed.1994) [hereinafter Fishman]. The nonproduction, alteration, or destruction of evidence is commonly referred to as spoliation. *Langlet,* 283 N.W.2d at 333. When established, the inference is regarded as an admission by conduct of the weakness of the party's case. Edward W. Cleary et al., *McCormick on Evidence* § 273, at 808 (3d ed.1984); 2 Fishman § 13:12, at 489–90. The inference is imposed both for evidentiary and punitive reasons. *Langlet,* 283 N.W.2d at 333; 2 Fishman § 13:12, at 490. The evidentiary value of the inference is derived from the common sense observation that a party who destroys a document with knowledge that it is relevant to litigation is likely to have been threatened by the document. *Beil v. Lakewood Eng'g & Mfg. Co.,* 15 F.3d 546, 552 (6th Cir.1994) (when a party to an action has notice that

an item is relevant to the lawsuit and proceeds to destroy the item, "common sense" dictates an inference that the party destroying the item is likely to have been threatened by the evidence); 2 Fishman § 13:12, at 490. Additionally, an inference serves to deter parties from destroying relevant evidence. *Beil*, 15 F.3d at 552; 2 Fishman § 13:12, at 490.

The inference can arise in a variety of circumstances, including medical malpractice actions involving the failure to produce relevant medical records. *See generally* Thomas G. Fischer, Annotation, *Medical Malpractice: Presumption or Inference From Failure of Hospital or Doctor to Produce Relevant Medical Records,* 69 A.L.R.4th 906 (1989 & Supp.2000) (discussing state and federal cases addressing spoliation inference in medical malpractice actions). However, the inference can only be based upon the intentional destruction of evidence. *Hendricks,* 609 N.W.2d at 491; *State v. Atley,* 564 N.W.2d 817, 821 (Iowa 1997); *State v. Hulbert,* 481 N.W.2d 329, 334 (Iowa 1992); *Langlet,* 283 N.W.2d at 333. It is not warranted if the disappearance of the evidence is due to mere negligence, or if the evidence was destroyed during a routine procedure. *See Hulbert,* 481 N.W.2d at 333–34; *Langlet,* 283 N.W.2d at 334. Furthermore, the missing evidence must be *"within the control of a party* whose interests would naturally call for its production." *Quint–Cities Petroleum Co. v. Maas,* 259 Iowa 122, 127, 143 N.W.2d 345, 348 (1966) (emphasis added); *see Gamerdinger v. Schaefer,* 603 N.W.2d 590, 595 (Iowa 1999). These elements are essential to both the common sense evidentiary rationale for the inference and its punitive sanction.

Janet argues she is entitled to the inference for purposes of summary judgment because the facts of her case must be considered in a light most favorable to her claim and all reasonable inferences must be drawn in her favor. However, this familiar rule of summary judgment applies to factual inferences, not those grounded in a legal principle. Janet is not entitled to the spoliation inference without showing the existence of a genuine issue of material fact supporting the inference. Thus, she must show intentional destruction of the records as well as control of the records. In doing this, she is entitled to have all reasonable inferences from the evidence drawn in her favor.

The factual basis to support the intentional nonproduction of the records in this case is based on Dr. Overton's belief that the addition of handwritten notes to the transcribed notes of the physician's assistant was unusual and suspicious, and could indicate a broader attempt by the clinic and its doctors to conceal information. Yet, we think this logic amounts only to bare speculation and conjecture, and cannot be legitimately inferred from the facts. *See Walls,* 618 N.W.2d at 286; *Meyn v. State,* 594 N.W.2d 31, 34 (Iowa 1999).

The handwritten notes made by the physician's assistant may support a reasonable inference that the information was added to the transcribed notes with a motive to protect against potential litigation. However, it would be rank speculation to infer from that fact, considered in a light most favorable to Janet's claim, that the other records of the clinic were intentionally destroyed because the doctors believed that those records contained adverse information relevant to a potential lawsuit. The motive of the physician's assistant to bolster her notes in anticipation of potential litigation does not show a motive by the clinic or its doctors to intentionally purge themselves of any records to prevent their production during any subsequent litigation. Moreover, Janet has produced no other circumstances in addition to the phy-

sician's assistant's notes to support the spoliation inference. There were no circumstances alleged to show the clinic or its physicians believed the records might be harmful to them in any lawsuit, or other circumstances raised by Janet which are compatible with the common sense observation which supports the inference and the imposition of sanctions against the clinic or the physicians. Additionally, Janet has failed to show the existence of a genuine factual issue that the clinic even possessed or controlled the records at any relevant time to support the imposition of the spoliation inference. To the contrary, the facts are unchallenged that the records were delivered to the hospital.

Janet also argues that the failure to grant her the benefit of the spoliation inference violates public policy by punishing the blameless party and rewarding the party who lost the records. To the contrary, we find public policy supports the dismissal of this action. A spoliation inference should be utilized prudently and sparingly. See Crosser v. Iowa Dep't of Pub. Safety, 240 N.W.2d 682, 685 (Iowa 1976). In cases in which we have permitted the spoliation inference, the party against whom the inference was used was in possession of the evidence and engaged in conduct resulting in the loss of the evidence under circumstances giving rise to a common sense observation that the evidence would have been unfavorable to the party. See Prudential Ins. Co. of Am. v. Lawnsdail, 235 Iowa 125, 130, 15 N.W.2d 880, 883 (1944) (insurance company destroyed record of policy after refusing payment on policy to insured); Warren v. Crew, 22 Iowa 315, 322 (1867) (party destroyed contract after learning of claim under it); see also Holmquist v. Volkswagen of Am., Inc., 261 N.W.2d 516, 523 (Iowa Ct.App.1977) (defendants tightened retention bolts on automobile after accident before plaintiff was able to examine automobile). In this case, there is no direct or circumstantial evidence to contradict the evidence presented by the clinic and its physicians that the medical records were delivered to the hospital and never returned, and no evidence to raise a genuine issue of fact whether the conduct of the clinic in failing to produce the records justified an inference that the records contained evidence which would have established the elements of negligence. Moreover, there is no evidence to show the motive of the physician who hand-delivered the medical file to the hospital was anything but to help the doctors at the hospital in their fight to save Paul's life. See Hulbert, 481 N.W.2d at 334 (deputy's motive was "to help, not hinder, the defense" when he erased tape while making a duplicate for the defendant).

 We acknowledge that we are slow to grant summary judgment in negligence actions. Kulish v. Ellsworth, 566 N.W.2d 885, 888 (Iowa 1997) (malpractice actions are not ordinarily susceptible to summary judgment). Clearly, claims of negligence are fact-based and must normally be resolved by a trial. Walls, 618 N.W.2d at 284; Schermer v. Muller, 380 N.W.2d 684, 687 (Iowa 1986). We also recognize the frustration faced by litigants, like Janet, when documents and other evidence needed to help prove their claim disappear. Yet, the spoliation inference sought to be utilized by Janet is not grounded on the need or blamelessness of the party seeking the inference, or the mere fact that the evidence has disappeared. It is based on the nature of the conduct of the party who destroyed the evidence and the need to punish such conduct. Langlet, 283 N.W.2d at 333. This rationale is simply nowhere to be found under the circumstances presented in this case. Thus, without the inference, there is no evidence to support the proximate

cause element of the claim and summary judgment is warranted.

██ The spoliation inference must be carefully applied in a fair and even manner to all parties. This means the party seeking the inference must generate a genuine factual issue whether the party in control of the evidence intentionally altered or destroyed it. If we permit the inference to be used under any lesser standard, the inference will lose its validity and impose unfair sanctions. It may also impose other unwanted burdens on our legal system. *See Meyn,* 594 N.W.2d at 34 (cause of action for negligent spoliation of evidence rejected in part because it would generate an increase in litigation and impose an undue burden on our court system).

### IV. Conclusion.

We conclude the district court properly granted summary judgment. Janet was not entitled to a spoliation inference, and thus is unable to establish a sufficient showing of proximate causation to withstand defendant's summary judgment motion.

**AFFIRMED.**