# IN THE COURT OF APPEALS OF IOWA

No. 15-0326
Filed April 27, 2016

**WILLIAM LEE TORRENCE and CHERI LEIGH TORRENCE,**
    Plaintiffs-Appellants,

**vs.**

**MURPHY'S BAR & GRILL, INC. and ESCAPE LOUNGE, LLC,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.


William and Cheri Torrence appeal from the district court's order granting summary judgment in favor of Murphy's Bar & Grill, Inc. and Escape Lounge, LLC and dismissing the Torrences' dramshop action against Murphy's and Escape Lounge. **AFFIRMED.**


Marc S. Harding of Harding Law Office, Des Moines, for appellants.

John F. Fatino and Thomas I. Henderson of Whitfield & Eddy, P.L.C., Des Moines, for appellee Murphy's Bar & Grill.

Mark J. Wiedenfeld and James W. Russell of Wiedenfeld & McLaughlin, L.L.P., Des Moines, for appellee Escape Lounge.


Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

## I. Background Facts and Proceedings

Andrew Jackson lost control of his vehicle, which flew into the air and landed in the opposite lane on top of William Torrence's vehicle. Torrence suffered serious and permanent injuries. Jackson died at the scene; his blood alcohol level was 0.27—more than three times the legal limit. *See* Iowa Code § 321J.2(1)(b) (2013).

Torrence and his wife sued three bars Jackson visited prior to the collision. They alleged bar employees served Jackson alcohol when they knew or should have known he was intoxicated or would become intoxicated. *See id.* § 123.92. The Torrences ultimately dismissed one of the establishments—Phil's Bar and Grill. The remaining two bars, Murphy's Bar & Grill, Inc. and Escape Lounge, LLC, moved for summary judgment. The district court initially denied Escape Lounge's motion on the ground there was a fact question as to whether the bar sold and served Jackson alcohol. After conducting discovery, Escape Lounge renewed its motion. The district court granted both bars' motions. The Torrences moved for enlarged findings and conclusions. The district court expanded certain portions of its ruling but denied the motion. This appeal followed.

## II. Analysis

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

The Torrences contend they generated genuine issues of material fact on (A) whether the bars sold and served Jackson to the point of intoxication and knew or should have known Jackson would become intoxicated, and (B) whether the former proprietor of Escape Lounge hid or destroyed evidence.

### A. Sale and Service of Alcohol; Knowledge of Intoxication

Iowa's dramshop statute states:

> Any person who is injured . . . by an intoxicated person . . . has a right of action for all damages . . . against any licensee or permittee . . . who sold and served any beer, wine, or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated, or who sold to and served the person to a point where the licensee or permittee knew or should have known the person would become intoxicated.

Iowa Code § 123.92(1)(a).

The following facts are undisputed. Jackson withdrew cash on the afternoon of the accident and went to Escape Lounge shortly after it opened at 1:00 p.m. By 2:07 p.m., Jackson was at Murphy's, where he withdrew more cash. A bartender served him two 16-ounce beers and a shot of whiskey. Sometime after 5:30 p.m., Jackson was at Phil's. He got into an argument and was asked to leave. Jackson returned thirty or forty minutes later. He was again told to leave. The accident occurred around 7:00 p.m.

As will become apparent, additional facts, while putatively disputed, were in fact uncontroverted.

#### 1. Murphy's

The parties agree Murphy's "sold and served" Jackson two beers and a shot of whiskey. *See id.* The key question is whether Murphy's "knew or should have known" Jackson was intoxicated or would become intoxicated. *See id.* On

this question, the district court cited Murphy's expert, who opined the alcohol Jackson consumed would have resulted in a blood alcohol level of .03. The court noted the absence of "contradictory expert testimony" and concluded:

> [T]here is insufficient evidence beyond speculation and conjecture to create a genuine issue of material fact that [Murphy's] employees served Jackson when they knew or should have known he was intoxicated or would become intoxicated as a result of the alcohol served to him. There is a failure of proof as to what happened after Jackson left Murphy's. His presence in Murphy's with two beers and a shot at least two hours before the accident is not enough.

We discern no error in this ruling. Murphy's expert considered Jackson's age, height, and weight and the undisputed number of drinks he consumed at the bar. The expert opined Jackson "would not have been showing signs or effects of intoxication" and further opined he had no more than a blood alcohol level of .03 to .035 "in the middle of the afternoon." *See Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 72 (Iowa 2004) ("Evidence of a person's blood-alcohol level, if available, is important evidence of intoxication."). The Torrences did not refute these opinions. *See Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012) (noting "[w]hen a motion for summary judgment is properly supported, the nonmoving party is required to respond with specific facts that show a genuine issue for trial" (citation omitted)). They failed to establish a genuine issue of material fact and summary judgment was appropriate as a matter of law.

*2. Escape Lounge*

In support of its summary judgment motion, Escape Lounge asserted the bar neither "sold" nor "served" Jackson alcohol or "knew or should have known" Jackson was intoxicated or would become intoxicated. *See* Iowa Code § 123.92(1)(a). The district court agreed. The court cited the absence of

(1) observations of Jackson's alcohol consumption, (2) "receipts showing the sale of any alcoholic beverage to Jackson at Escape Lounge," and (3) observations of intoxication signs in Jackson. The court also relied on an unrefuted statement from Escape Lounge's owner that Jackson said he was not drinking because he planned to attend his ex-wife's birthday party later in the evening. While the court agreed one person saw Jackson with "a pint glass of clear liquid," the court stated "[c]lear liquor like vodka is not served in a pint glass at Escape Lounge." In its post-summary judgment ruling, the court further explained:

> [T]here is no evidence that the Escape Lounge sold and served vodka in the type of pint glass observed on the bar in front of Jackson. The evidence in the record is that vodka is served in another type of glass at the Escape Lounge. Only soda, beer or water is served in a pint glass at the Escape Lounge. There is no evidence to the contrary other than Plaintiffs['] speculation the pint glass contained a double shot of vodka.

The Torrences failed to refute this evidence.[1] They could not point to any witness who observed Jackson consuming alcohol. The witness who saw Jackson with the pint glass stated she did not believe he was drinking alcohol and cash receipts were not tied to Jackson. But even if a legitimate inference could be drawn that the pint glass contained alcohol, significant to our decision is

---

[1] The Torrences' attorney attempts to extrapolate the number of drinks Jackson must have consumed based on his blood alcohol level at the time of the accident. We decline to consider these calculations, which were not proffered in resistance to the summary judgment motions either by affidavit or otherwise. *See* Iowa Rs. Civ. P. 1.981(3) ("Any party resisting the motion [for summary judgment] shall file a resistance within 15 days . . . . If affidavits supporting the resistance are filed, they must be filed with the resistance."); 1.981(5) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). For the same reason, the district court did not err in declining to consider information proffered by the Torrences in their motion to enlarge the summary judgment ruling. *See* *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015) ("Generally speaking, a party cannot use a rule 1.904(2) motion to introduce new evidence.").

the fact that no witness stated Jackson was intoxicated or appeared to be intoxicated while at the Escape Lounge.

Nor is a genuine issue of material fact generated by disputed evidence of a second visit by Jackson later in the afternoon. Absent attestations that Jackson was consuming alcohol, this visit does not advance the Torrences' dramshop claim against Escape Lounge. *See Shagnasty's*, 688 N.W.2d at 75 (reversing summary judgment ruling in favor of bar where patron had a beer in her hand, was visibly intoxicated, and "because of the presumably short timeframe between service and the attack" on another patron); s*ee also Hawthorne v. Estate of Krommenhoek*, No. 12-1455, 2013 WL 2637176, at *3 (Iowa Ct. App. June 12, 2013) (concluding the plaintiff failed to generate a fact issue that any such service of alcohol was "made 'to the intoxicated person' targeted under the act" (quoting Iowa Code section 123.92)); *Vaughn v. Theo's Inc.*, No. 04-1462, 2005 WL 2989729, at *3 (Iowa Ct. App. Nov. 9, 2005) ("[W]e do not read *Shagnasty's* so broadly that one need not show the intoxicated person actually possessed a drink or obtained it in the tavern."). Notably, Jackson's ex-wife, who saw him at Phil's, stated Jackson "did not appear intoxicated to [her] or anybody that was with" her. She continued, he "was not slurring that day. He was not acting intoxicated that day." We conclude the district court did not err in granting Escape Lounge's motion for summary judgment.

**B.** *Destruction of Evidence*

In the district court, the Torrences argued the owner of Escape Lounge destroyed or lost evidence relevant to the case, entitling them to an inference that the evidence established Escape Lounge's sale and service of alcohol to

Jackson. The court rejected this argument. The Torrences contend this was error.

The principle on which the Torrences rely has been articulated as follows:

[T]he intentional destruction of or the failure to produce documents or physical evidence relevant to the proof of an issue in a legal proceeding supports an inference that the evidence would have been unfavorable to the party responsible for its destruction or nonproduction. The nonproduction, alteration, or destruction of evidence is commonly referred to as spoliation. When established, the inference is regarded as an admission by conduct of the weakness of the party's case.

*Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) (citations omitted). The inference "is not warranted if the disappearance of the evidence is due to mere negligence, or if the evidence was destroyed during a routine procedure." *Id.* at 719.

There is no question Escape Lounge's owner, James Tiernan, failed to produce key pieces of evidence. On learning of the accident, he drafted a statement attesting that Jackson "was in the bar and did not have a single drink." He and "four other people" signed the statement. Tiernan's attorney later advised the Torrences the written statements were "destroyed or misplaced." Additionally, the recordings from four video cameras at the bar were overwritten, a manual authored by the liquor license authority was lost, and six bar receipts from the day of the accident were missing. While the volume of missing evidence may raise speculations of intentional destruction, the Torrences were unable to refute the legitimate explanations for the losses proffered by Escape Lounge. *See id.* (finding plaintiff's logic amounted to "bare speculation and conjecture" and could not "be legitimately inferred from the facts").

Tiernan testified he "wish[ed]" he still had the attestation he prepared shortly after the accident, but he lost it.[2] The loss of this document did not evince an intent to destroy pertinent evidence because most of the people who signed the attestation testified by deposition and corroborated Tiernan's statement that Jackson drank no alcohol at the bar. *Id.* at 719-20 (stating one employee's bolstering of notes in anticipation of litigation did not demonstrate motive on part of others to intentionally destroy documents adverse to claim.)

As for the video tapes, Escape Lounge attested they were recorded over after twenty-one days in the normal course of business. The Torrences conceded they did not notify Escape Lounge of the impending action or request the tapes within the twenty-one-day period.

The manual was taken home by an employee and was not returned. The Torrences did not refute the assertion that this was a standard manual provided to all liquor licensees and, to that extent, was easily available.

The missing bar receipts, according to one employee, may have reflected "a no-sale to get change for a customer if they wanted to play the pool table or the gambling machines." As noted, the Torrences provided no evidence tying these or any other bar receipts to Jackson.

We conclude the district court did not err in denying the Torrences' request for an adverse inference against Escape Lounge.

We affirm the district court's grant of summary judgment in favor of Murphy's and Escape Lounge.

**AFFIRMED.**

---

[2] Tiernan passed away after he gave a deposition.