# IN THE COURT OF APPEALS OF IOWA

No. 20-0610
Filed December 15, 2021

**EDDIE HICKS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

Eddie Hicks appeals the summary disposition of his postconviction-relief application. **AFFIRMED**.

Tiffany Kragnes, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

Eddie Hicks appeals the summary disposition of his postconviction-relief (PCR) application. He claims the State suppressed evidence in his underlying criminal trial, his trial counsel was ineffective for failing to secure a number of expert witnesses, and that the PCR court abused its discretion in denying his motion to amend his application. Additionally, he claims his PCR counsel was ineffective. We find there were no genuine issues of material fact relating to the claimed *Brady* violation or trial counsel's effectiveness. The court did not err in denying Hicks's motion to amend. Hicks's PCR counsel was not ineffective. Accordingly, we affirm.

## I.     Background Facts & Proceedings

The facts underlying Hicks's conviction were aptly set out in this court's decision on his direct appeal:

> Hicks and Lemon began dating in 2006 in Chicago. They had a tumultuous relationship marked by infidelity and abuse. They separated after an argument in May 2015. Around Memorial Day that year Hicks called Lemon's mother threatening to "flatten [Lemon's] head into a pancake" and saying "[Lemon] is going to be one daughter [she] don't have anymore." Hicks also said he recently discovered Lemon had misrepresented how old she was and because she was underage when their relationship began, Hicks expressed concern he "could be doing time as a result." Around the same time, Hicks called Lemon's sister with this dark message: "[Y]ou all going to catch you all sister in the casket; tell your mama to get this casket ready."
> Hicks and Lemon reconciled on June 12, 2015. They took a bus from Chicago to Dubuque four days later. When they arrived in Dubuque, according to Hicks, "everything was fine." But Hicks later began to feel faint and sought medical attention. The next day started off as uneventful. Lemon went to work; later they picked up Hicks's medication, ate, smoked marijuana, and napped.
> Hicks later said that upon waking up, he accessed Facebook on his phone, prompting an argument with Lemon. According to Hicks, he got up and went into the bathroom and Lemon threw a

phone at him. Then the fight turned physical and Hicks recalled Lemon trying to hit him with a frying pan and stab him with a paring knife. Hicks said he returned Lemon's attacks.

. . . .

Eventually, he fled the apartment and demanded water and alcohol from neighbors. A witness hanging out with friends at another apartment said she heard "somebody was yelling for help" and found Hicks with "blood all over him."

. . . .

Emergency medical personnel loaded Hicks onto a cot and into an ambulance. He was handcuffed to the cot and a police officer rode along in the ambulance to the hospital. An emergency room doctor described Hicks as "intermittently agitated" and recalled at times "his language was difficult to understand" and other times he "spoke very clearly." Hicks had benzodiazepines, alcohol, and phencyclidine (PCP) in his system, according to a toxicology report.

Before he was sedated by medical staff so they could treat his injuries, Hicks spoke briefly with Officer Cory Tuegel in the emergency room. Tuegel asked Hicks just seven questions, starting with "what happened?" Hicks responded: "I loved her too much." Hicks clarified he was talking about his girlfriend, Kahdyesha Lemon. Hicks said Lemon was "home sleeping" but also acknowledged she suffered stab wounds. Hicks soon ended the conversation.

Back at the apartment building, officers discovered Lemon outside, suffering from more than one-hundred incised stab wounds. Inside the apartment, the floors were so soaked in blood that it was difficult for officers to keep their footing. Blood splatter glazed the walls of the bedroom, kitchen, and bathroom. An officer testified he could not remember an area of the home not covered in blood. Officers found a bent frying pan matted with hair and blood. Officers also located a paring knife on the bed and later discovered two of Lemon's teeth, with the "whole root" attached, under the rug.

Medics rushed Lemon to the hospital and straight into a trauma room. Lemon was given roughly three times her blood volume to improve her blood pressure. Doctors shocked her heart and gave her epinephrine fifteen to twenty times to restart her heart. Despite these efforts, Lemon died three to four hours later of hemorrhagic shock. She was twenty-one years old.

Hicks woke up the next day in the hospital and asked about Lemon. Officers Brendan Welsh and Nick Schlosser set up an audio-recorder in Hicks's hospital room and interviewed him. According to Hicks, Lemon was angry because she just found out from Facebook that Hicks had been cheating on her "on and off for ten years." Hicks told them Lemon hit him with a pan and was trying to stab him. Hicks told the officers: "I hit her once probably, twice, all I was trying to do was get this girl up off of me." He later admitted hitting her as many as four times in the head. Hicks also said Lemon tried to stab him in the heart. He showed the officers he had four or five cuts to his chest

and neck. But Hicks said he was able to take the knife from her. He admitted cutting her multiple times "anywhere" on her body. He also said he "knew he was stronger than her, that [he] could get away from her." Hicks told the officers he last smoked PCP four days before the stabbing. When Hicks was discharged from the hospital, he left in police custody.

*State v. Hicks*, No. 17-0130, 2018 WL 1433788, at *1-2 (Iowa Ct. App. Mar. 21, 2018).

Hicks was charged with first-degree murder. He pled not guilty, claiming self-defense and intoxication. Before trial, he made a motion to compel evidence relating to a glass table that was broken during the fight. The State claimed that they did not have custody of the evidence Hicks sought, so it was never turned over to him. After a six-day bench trial, the court found Hicks guilty of first-degree murder, in violation of Iowa Code section 707.2(1)(a) (2017).

Hicks appealed, raising several pro se claims including prosecutorial misconduct based on a violation of the principles laid out in *Brady v. Maryland*, 373 U.S. 83 (1963), alleging the State suppressed the evidence relating to the glass table. He also contested Lemon's cause of death and claimed ineffective assistance of counsel. This court found no evidence the State suppressed any evidence. *Hicks*, 2018 WL 1433788, at *10. The court found that Hicks's conduct was the cause of Lemon's death. *Id.* Finally, the court found the record was not adequately developed to decide the issue of ineffective assistance but preserved the claim for PCR proceedings. *Id.* at *11.

Hicks filed a pro se PCR application on August 2, 2018—his first. He raised several issues, including a claim of ineffective assistance of trial counsel based on his counsel's failure to hire medical experts to testify about his post-traumatic

stress disorder (PTSD) and the cause of Lemon's death, and their failure to aggressively search for the glass and other items from the broken table. He alleged the State withheld that evidence. Hicks's attorneys amended the application twice, although the claims stayed largely the same. One of his PCR attorneys eventually requested to see the glass shards, which was "brought to the Law Enforcement Center and [the attorney] photographed the evidence."

The State filed a motion for summary disposition in July 2019. On September 10, Hicks filed a motion to amend his application to include a claim of prosecutorial misconduct, alleging a *Brady* violation. The court denied the request on September 20 and affirmed its denial after a motion to reconsider. The court found the claim was duplicative of one already raised on direct appeal.

The court granted summary disposition on March 20. The court found that the issue of Lemon's cause of death was already decided on direct appeal, and, regardless, "it is beyond reason to argue that Kahdyesha Lemon died from something other than Hicks stabbing her more than 100 times and beating her in the head with a frying pan." The court similarly found prosecutorial misconduct had been decided on direct appeal. Finally, the court found no evidence that Hicks suffered from PTSD and concluded that Hicks did not suffer prejudice from his counsel's failure to hire experts to testify to his mental illness or Lemon's cause of death. Hicks appeals.

## II.     Standard & Scope of Review

We generally review postconviction proceedings for errors at law. *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). However, "[w]hen the basis for relief implicates a violation of a constitutional dimension, our review is de novo." *Id.*

"Denial of a motion to amend will only be reversed where a clear abuse of discretion is shown." *Daniels v. Holtz*, 794 N.W.2d 813, 817 (Iowa 2010). Despite having only a statutory right to effective counsel in PCR proceedings, we still apply a de novo review to claims of ineffective assistance of PCR counsel. *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011).

## III.    Discussion

Hicks contends the court erroneously granted summary disposition. In particular, he alleges that summary disposition was inappropriate for his *Brady* claim. Similarly, he claims there are genuine issues of material fact relating to his counsels' ineffective assistance for their failure to investigate the glass shards and their failure to obtain medical experts to testify about his PTSD and the injuries the glass shards caused Lemon. He also argues the court abused its discretion in denying his motion to amend his application. Finally, he argues his PCR counsel was ineffective for failing to object to the State's motion for summary disposition on procedural grounds.

### A.    Summary Disposition

Iowa Code section 822.6(3) (2020) permits summary disposition of PCR applications. "We apply our summary judgment standards to summary disposition of [PCR] applications." *Moon*, 911 N.W.2d at 142. Summary disposition is appropriate when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Iowa Code 822.6(3); *accord* Iowa R. Civ. P. 1.981(3). The burden of proving the nonexistence of a genuine issue is on the moving party. *Linn v. State*, 929 N.W.2d 717, 730 (Iowa 2019). We "view the entire record in the light most favorable to the nonmoving party." *Id.* (citation

omitted). Furthermore, "[t]he court must also indulge on behalf of the nonmoving party every legitimate inference reasonably deduced from the record." *Id.* Summary disposition is not appropriate if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

### 1. *Brady* Violation

Hicks's first claim is based on an alleged *Brady* violation arising from the State's failure to hand over multiple glass shards that were produced by the breaking of a glass table during the struggle. To show a *Brady* violation, Hicks needs to "prove by a preponderance of the evidence '(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt.'" *Moon*, 911 N.W.2d at 145 (quoting *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011)). There is no good-faith exception to suppression. *Brady*, 373 U.S. at 87. Evidence is not suppressed when the defendant "either knew or should have known of the essential facts, permitting him to take advantage of it." *State v. Sauvain*, No. 20-0164, 2021 WL 811175, at *3 (Iowa Ct. App. Mar. 3, 2021). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Moon*, 911 N.W.2d at 145 (quoting *Cornell v. State*, 430 N.W.2d 384, 386 (1988)). A reasonable probability is one that "undermine[s] confidence in the verdict." *Moon*, 911 N.W.2d at 146 (quoting *Harrington v. State*, 659 N.W.2d 509, 523 (Iowa 2003)).

The district court found the issue of withholding evidence was already decided by this court on Hicks's direct appeal. In particular, the district court noted that the court of appeals found, "[t]he [trial] court ordered the materials be provided

to Hicks. Nothing in the record indicates the State failed to comply with the order." *Hicks*, 2018 WL 1433788, at *10. We agree. As such, Hicks cannot raise this claim in his PCR action because it was already decided on direct appeal.[1] Iowa Code § 822.8 ("Any ground finally adjudicated . . . in any . . . proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application . . . .").

Even if the issue was not foreclosed by Hicks's direct appeal, he cannot establish a *Brady* violation. First, Hicks cannot establish suppression of evidence. While Hicks's PCR counsel ultimately found the evidence the State claimed it never had, there is no evidence the State suppressed it from the defense. The evidence was easily located and promptly turned over once PCR counsel decided to look for it. Trial counsel had the same ability to find it—it was always listed on the inventory logs. Hicks's attorneys had all the information they needed to obtain the glass shards. Thus, there was no suppression. *See Sauvain*, 2021 WL 811175, at *3.

Similarly, Hicks cannot establish that any alleged suppression of evidence was material. Hicks wanted to use the handful of glass shards to establish that

---

[1] Hicks also argues the PCR court erred by denying his motion to amend his application to include a claim of prosecutorial misconduct. His motion to amend was based on the supposed suppression of the glass shards by the State, a *Brady* violation. The court rejected the motion, stating that the matter was already decided on Hicks's direct appeal. Courts have "considerable discretion in ruling on a motion for leave to amend." *Langdeaux v. State*, No.10-1625, 2012 WL 1439077, at *6 (Iowa Ct. App. Apr. 25, 2012). For the same reasons stated above, the court did not abuse that discretion in finding the proposed amendment had been decided on direct appeal and therefore could not be raised again. In any event, the claim was decided by the district court in its order on summary disposition.

some of Lemon's 113 "sharp force injuries" were due to something other than his stabbing her. By reducing the number of wounds he inflicted, Hicks wants to reduce the amount of violence he committed to a level reasonable for self-defense. This argument is unpersuasive. Even if some of the victim's cuts were caused by the shattered glass, Hicks still admitted to stabbing Lemon "anywhere on her body," including her head and chest, many times. Testimony indicated that while the glass could have caused some small cuts, most of her wounds required something to "penetrate into them," which was unlikely with small shards of glass. Finally, officers observed blood throughout the apartment, not just near the broken glass table. There was overwhelming evidence that Hicks took control of the weapon and continued to attack Lemon well beyond what would be reasonable for self-defense. Thus, introduction of evidence showing a handful of her wounds were caused by glass shards would not have made a difference to the outcome of the trial. The court did not err in granting summary disposition on the claim of a *Brady* violation.

### 2. Ineffective Assistance of Trial Counsel

Hicks contends his trial counsel was ineffective because of their failure to aggressively search for and compel the production of the glass shards. He also claims they were ineffective because of their failure to obtain medical experts to speak on the damage caused by glass shards and how his PTSD affected his behavior—both of which could have made Hicks's reaction reasonable for self-defense.

A claim of ineffective assistance of counsel has two prongs. "[A]ll postconviction relief applicants who seek relief as a consequence of ineffective

assistance of counsel must establish counsel breached a duty and prejudice resulted." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011)). The applicant must establish both prongs by a preponderance of the evidence. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). "Failure to demonstrate either element is fatal to a claim of ineffective assistance." *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

For the breach of duty prong, the applicant must demonstrate the attorney "performed below the standard demanded of a reasonably competent attorney." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). We begin with the presumption that counsel performed effectively. *Ledezma*, 626 N.W.2d at 142. A breach of duty is more likely to be found when counsel's conduct is "attributed to a lack of diligence as opposed to the exercise of judgment." *Lamasters*, 821 N.W.2d at 866. "When counsel makes a reasonable tactical decision, this court will not engage in second-guessing." *Id.* (quoting *Fryer v. State*, 325 N.W.2d 400, 413 (Iowa 1982)).

To establish the prejudice prong, the applicant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Id.*

Hicks alleges his counsel was ineffective for their failure to obtain an expert witness to testify about how being stabbed would trigger his PTSD. We disagree. First, there is nothing in the record from either the underlying trial or PCR proceedings to indicate Hicks suffers from PTSD. There is also nothing to indicate

that being stabbed by Lemon would cause a "psychological reaction" sufficient to undermine his conviction. While we review a grant of summary judgment by permitting all reasonable inferences in the non-moving party's favor, "an inference is not legitimate if it is 'based upon speculation or conjecture.'" *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) (citation omitted).

Hicks's hypothesis that he has PTSD and that it was triggered by the fight is merely speculation. In fact, Hicks sent letters from jail indicating that while his lawyers wanted to pursue a defense based on his PCP usage, he thought his case was "straight self-defense." He never revealed to police, the court, or his attorneys that PTSD played a role. *Cf. Linn*, 929 N.W.2d at 751-53 (finding that the court should have granted an expert witness to testify on battered-wife-syndrome because the defendant testified at length over the abuse inflicted by the victim, had told law enforcement immediately after her arrest that she was tired of being abused, and raised the issue with her attorney before trial). Hick's attorney did not breach a duty by failing to make a motion for an expert witness when there were no facts indicating the witness would be useful.

Furthermore, even if Hicks's attorney had made a motion to request an expert witness, it would likely have been denied. Courts may grant expert witnesses at the state's expense to indigent defendants when they are "reasonably necessary" and "in the interest of justice." *State v. Dahl*, 874 N.W.2d 348, 352 (Iowa 2016); *see also* Iowa R. Crim. P. 2.20(4). The defendant bears the burden of demonstrating their need for the witness. *Id.* Our supreme court has noted that Iowa courts "remain 'committed to the liberal view on the admission of psychological evidence.'" *Linn*, 929 N.W.2d at 750 (quoting *State v. Dudley*, 856

N.W.2d 668, 676 (Iowa 2014)). However, "[w]e discourage courts from allowing the State to pay for defense services when an indigent defendant merely seeks to embark on a random fishing expedition in search of a defense." *Dahl*, 874 N.W.2d at 352.

Hicks's theory is not supported by any facts in the record—it is a fishing expedition the district court would likely have rejected. Hicks's counsel had no obligation to file a frivolous motion. *See State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003) ("Trial counsel has no duty to raise an issue that has no merit."). It is not reasonably probable that the outcome would have been different had his counsel made such a motion. Trial counsel was not ineffective for failing to obtain an expert witness on PTSD, and summary disposition was appropriate.[2]

Hicks's counsel was similarly not ineffective for their failure to obtain an expert witness to discuss the potential wounds caused by the shattered glass found at the scene. As described above, Lemon had over 113 "sharp force injuries" and Hicks admitted to beating her on the head with a frying pan four times— knocking two teeth out at the root. Experts testified at trial that while the glass may have caused some of Lemon's smaller wounds, most of the wounds involved puncturing inconsistent with loose shards of glass. Even assuming the court granted an expert witness to testify on this matter, it would not have changed the

---

[2] We note that Hicks argues this court's preservation of error on the matter of ineffective assistance of counsel on direct appeal means he ought to have an evidentiary hearing on the merits. *See Hicks*, 2018 WL 1433788, at *11. Preserving his ineffective-assistance claim merely allowed him to raise it at the PCR level. It did not guarantee his claim would make it through the normal procedural hurdles leading to an evidentiary hearing.

outcome.[3]  Hicks suffered no prejudice from his counsel's failure to obtain an expert witness to testify about Lemon's wounds.  As such, his counsel was not ineffective, and summary disposition was appropriate.

### B.      Ineffective Assistance of PCR Counsel

Hicks claims his PCR counsel was ineffective due to their lack of challenge to the State's failure to follow procedural rules in their motion for summary disposition.[4]  "We judge ineffective assistance of appellate counsel claims against the same two-prong test utilized for ineffective assistance of trial counsel claims." *Ledezma*, 626 N.W.2d at 141.

The State contends Hicks did not preserve error on this claim.  As a general rule, this court will only consider claims that have been raised and decided by the district court.  *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).  Hicks did not raise this claim at the PCR level.  However, an exception exists for claims of ineffective assistance of counsel raised for the first time on appeal if "the appellate record is adequate."  *Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018).  We find the record is adequate.  Therefore, we turn to the merits of Hicks's claim.

"[T]he principles underlying [a] summary judgment procedure apply to motions of either party for disposition of an application for postconviction relief without a trial on the merits."  *Schmidt v. State*, 909 N.W.2d 778, 784 (Iowa 2018)

---

[3] We also find that trial counsel was not ineffective for failing to find the glass shards for the same reasons—utilizing the glass shards as evidence does not make it reasonably probable the result of the trial would be different.

[4] To the extent Hicks claims his PCR counsel was ineffective for their own failure to comply with procedural rules, we reject his argument.  The district court dismissed his application on the merits, not because of a procedural defect.  He suffered no prejudice.

(quoting *Manning v. State*, 654 N.W.2d 555, 560 (Iowa 2002)). Hicks claims the State failed to attach a separate statement of facts to their motion for summary disposition as required by the Iowa Rules of Civil Procedure. In particular, Hicks claims the State violated Iowa Rule of Civil Procedure 1.981(8). The section states:

> Upon any motion for summary judgment pursuant to this rule, there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried, including specific reference to those parts of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits which support such contentions and a memorandum of authorities.

Iowa R. Civ. P. 1.981(8).

The State appears to concede that it failed to file the appropriate supplement to their motion. However, Hicks's counsel was not ineffective for failing to object to the deficiency. First, Hicks's counsel responded to the merits of the motion for summary judgment. While they could have objected on procedural grounds, the decision to resist on the merits is a reasonable strategic choice. We decline to second-guess PCR counsel's strategic decisions. *See Lamasters*, 821 N.W.2d at 866.

Hicks's claim also fails because he cannot establish prejudice. Hicks claims that the deficiency in the State's motion hampered his counsel's ability to respond to the issues presented. However, the rule he claims the State violated is intended to assist the court, not the non-moving party, in discerning what facts the State believes are not subject to a genuine dispute. *Toomer v. Iowa Dep't of Job Serv.*, 340 N.W.2d 594, 597-98 (Iowa 1983) (finding that the predecessor to rule 1.981(8), which is materially identical, was "designed in part to assist [the] trial court in

examining the entire record before it . . . in light of the allegations in the motion."). Our supreme court has held that the non-moving party is not prejudiced when the motion for summary judgment is sufficiently clear on what the grounds for the motion are. *Glen Haven Homes, Inc. v. Mills Cnty. Bd. of Rev.*, 507 N.W.2d 179, 184 (Iowa 1993) ("[A] statement under [rule 1.981(8)'s predecessor] does not constitute a part of the record from which genuine issues of material fact may be determined. The statement . . . is intended to be a mere summary of claims . . . ."). The State's motion for summary disposition was clear as to what issues it believed were not subject to a genuine dispute, so Hicks was not prejudiced by the procedural deficiencies.

Finally, even if Hicks's counsel did object to the procedural defects, there is not a reasonable probability the court would have dismissed the State's motion. Courts retain their authority to rule on the motion even when it lacks the supplemental appendix. *Toomer*, 340 N.W.2d at 598. And, as Hicks makes clear in his appellate brief, both parties routinely ignored procedural formalities in this case. Thus, it is not reasonably probable that an objection to the form of the summary-disposition motion would have changed the outcome of the proceedings. PCR counsel was not ineffective.

## IV.    Conclusion

The district court did not err in granting summary disposition on Hicks's claims of a *Brady* violation and ineffective assistance of counsel, nor did it err in denying his motion to amend his application. Additionally, Hicks's PCR counsel was not ineffective.

**AFFIRMED.**