# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-3072

———————————————

Steve Williams; Teresa Williams

*Plaintiffs - Appellants*

v.

Jeremy Baum, M.D.; Nebraska-Iowa Radiology Consultants Inc.

*Defendants - Appellees*

Michelle Peterson-Jones, M.D.

*Defendant*

——————

Appeal from United States District Court
for the Southern District of Iowa - Western

——————

Submitted: April 13, 2022
Filed: September 1, 2022

——————

Before LOKEN, KELLY, and KOBES, Circuit Judges.

——————

KOBES, Circuit Judge.

Two doctors missed Steve Williams's cancer: Dr. Michelle Peterson-Jones in March 2015, and Dr. Jeremy Baum in January 2018. After another doctor eventually discovered the cancer, Williams sued both Peterson-Jones and Baum, arguing that

their negligence reduced his chance of surviving. The jury returned a favorable verdict for Dr. Baum, and Williams moved for a mistrial based on the district court's[1] evidentiary rulings. The court denied that motion, and we affirm.

I.

In March 2015, Williams went to his family doctor for chest pain. Dr. Peterson-Jones read Williams's chest x-rays but didn't notice any issues. In January 2018, Williams complained of pain in his right shoulder. His doctor recommended surgery and took a few routine x-rays of Williams's chest. Dr. Baum examined those x-rays and also didn't notice any abnormalities. Six months later, Williams underwent a biopsy and doctors found a cancerous tumor near his right lung. Everyone agrees that the tumor was visible on x-rays from 2015 onward and that both Dr. Peterson-Jones and Dr. Baum failed to diagnose it.

Williams and his wife sued Dr. Baum, Dr. Peterson-Jones, and Nebraska-Iowa Radiology Consultants, Inc. Williams alleged pain and suffering from the misdiagnosis and a reduced chance of survival, and his wife brought a loss of consortium claim. A few days before trial, Williams dismissed Dr. Peterson-Jones from the suit.

At trial, Dr. Baum focused extensively on Dr. Peterson-Jones—even though she was no longer a defendant. During opening statements, defense counsel mentioned that "Dr. Michelle Peterson . . . . did not identify any abnormalities at that time, but . . . there was a tumor present in that chest X-ray back on March 15th of 2015." Williams objected, arguing that Dr. Peterson-Jones's conduct was irrelevant and prejudicial.[2] The district court noted the objection and allowed opening statements to continue. Dr. Baum continued to focus on Dr. Peterson-Jones throughout the trial, saying that she reduced Williams's chance of surviving by 55%.

---

[1] The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, now retired.

[2] Objecting under Federal Rules of Evidence 401, 402, and 403.

Williams supported his negligence claim with expert testimony by Dr. Myron Marx, a radiologist. Dr. Marx said that Dr. Baum breached the standard of care by not spotting the tumor. He also noted that in the six months between Dr. Baum's negligence and Williams's cancer being discovered, the tumor had grown to the point that Williams "was no longer a candidate for surgical resection." Since surgery was not possible, "the only thing that could be offered to him [now] would be treatment with chemotherapy and radiation."

Throughout the trial, Dr. Baum questioned witnesses about three medical papers: Exhibit U, a randomized trial for patients with stage III lung cancer; and Exhibits S and T, studies on "tri-modality therapy" for Williams's type of tumor. Williams objected to these exhibits being referenced, arguing that they were hearsay, but the district court overruled his objections. At the end of the trial, Dr. Baum moved to submit the exhibits into evidence. The district court submitted them to the jury over Williams's objection.

The jury awarded Williams $27,500 for pain and suffering. But it concluded that Dr. Baum's misdiagnosis did not reduce Williams's chance of surviving, so it awarded him nothing on his loss of survivorship claim or his wife's loss of consortium claim. Williams moved for a new trial, arguing that the district court's evidentiary errors prejudiced the jury. The court rejected the motion, concluding that "the plaintiffs were in no way prejudiced by the medical records and treatises . . . considered by the jury, nor by [the] references to radiologist Dr. Peterson-Jones." Williams appeals.

## II.

"We review the denial of a motion for a new trial for a clear abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." *Manning v. Jones*, 875 F.3d 408, 410 (8th Cir. 2017) (citation omitted). This is a "stringent standard," *United States v. Broeker*, 27 F.4th

1331, 1338 (8th Cir. 2022), and "[m]otions for new trials are generally disfavored," *United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012) (citation omitted).

Williams argues that the district court should have granted his motion for a new trial for three reasons. First, he says that the testimony about Dr. Peterson-Jones's diagnosis was irrelevant and prejudicial. Federal Rule of Evidence 401 says that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Williams concedes that the fact that he had a tumor in 2015 is relevant. After all, if his tumor was already past the point of effective surgical treatment in 2015, then Dr. Baum's misdiagnosis wouldn't have affected his chance of surviving. Williams appears to suggest, however, that dismissing Dr. Peterson-Jones from the case without excluding evidence related to her allegedly negligent actions may have caused the jury to infer that Williams had been made whole for any compensable harm, dissuading the jury from awarding additional damages.

Williams next argues that the district court improperly allowed Exhibits S, T, and U to be referenced at trial. Those exhibits are hearsay, but the district court held that they fell within an exception under Federal Rule of Evidence 803(18), which says that "[a] statement contained in a treatise, periodical, or pamphlet [is admissible] if: (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as a reliable authority." Williams argues Rule 803(18) doesn't apply to those exhibits because Dr. Baum failed to establish them as reliable authorities.

Finally, Williams claims that even if Rule 803(18) applies to Exhibits S, T, and U, those exhibits still should not have been received by the jury. Federal Rule of Evidence 803(18) expressly says that if "[s]tatements in [l]earned [t]reatises, [p]eriodicals, or [p]amphlets" are admitted, "the statement may be read into evidence but not received as an exhibit."

-4-

We assume, for the sake of argument, that Dr. Peterson-Jones's conduct was irrelevant and that Exhibits S, T, and U should not have been referenced at trial or received as exhibits. But "[a]bsent error affecting the substantial rights of the parties, neither reversal nor a new trial is required." *Hoffmeyer v. Porter*, 758 F.3d 1065, 1068 (8th Cir. 2014) (citation omitted). In denying the motion for a new trial, the district court found that the jury wasn't influenced by the disputed evidence, noting that "[n]othing about Dr. Peterson-Jones's involvement as a radiologist impacted the jury's ultimate verdict." It also found that "the plaintiffs have not shown that the receipt of [Exhibits S, T, and U] was in any way prejudicial."

We hold that the district court's finding was not a clear abuse of discretion. While it is a close call, the record contained enough evidence for a jury to properly find that Williams failed to meet his burden of proof. For instance, during cross-examination, Dr. Marx acknowledged that he had previously testified that Williams had "a large Pancoast tumor in a moderately advanced stage" in 2015—three years before Dr. Baum's misdiagnosis. Dr. Marx also testified that Williams's tumor had breached his chest wall by 2015, which meant "surgery [was] not likely."[3] From that, the jury could reasonably conclude that Williams's chances of surviving were not affected by Dr. Baum's misdiagnosis, since his cancer was already past the point of surgical resection in 2018. The district court, which "is in the best position to determine the impact evidence will have upon the jury," *United States v. Worley*, 88 F.3d 644, 646 (8th Cir. 1996) (citation omitted), did not abuse its discretion in finding that the jury wasn't prejudiced by the disputed evidence.

---

[3]To the extent that Williams challenges this line of inquiry, we hold that it was relevant and admissible. If Williams's tumor was past the point of effective surgical treatment in 2015, then Dr. Baum's 2018 failure to diagnose would have been harmless. Accordingly, Dr. Marx's prior statements are relevant to causation and damages. *See, e.g.*, *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) (noting that medical malpractice claims require "a causal relationship between the violation and the harm allegedly suffered by the plaintiff").

## III.

We affirm.

_____